**SO ORDERED.**

**SIGNED this 17 day of February, 2011.**



Dale L. Somers
UNITED STATES BANKRUPTCY JUDGE

_____

Opinion Designated for Electronic Use, But Not for Print Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re:<br><br>TERRA BENTLEY II, LLC,<br><br>　　　　　　DEBTOR. | CASE NO. 09-23107-11<br>CHAPTER 11 |
| VILLAGE OF OVERLAND POINTE, LLC,<br><br>　　　　　　PLAINTIFF,<br><br>v.<br><br>TERRA BENTLEY II, LLC,<br>NRC ADVISORS, LLC,<br>STEVEN SEAT,<br>ERIC COMEAU,<br>TONY BETTIS,<br><br>　　　　　　DEFENDANTS. | ADV. NO. 10-6025 |

OPINION GRANTING MOTION TO DISMISS FILED BY DEFENDANTS

NRC ADVISORS, LLC, STEVEN SEAT, ERIC COMEAU, AND TONY BETTIS

This proceeding is before the Court on a motion to dismiss filed by NRC Advisors, LLC, Steven Seat, Eric Comeau, and Tony Bettis ("the NRC Defendants"), four of the five Defendants in this action. They appear by counsel Frank Wendt of Brown & Ruprecht, PC. Plaintiff Village of Overland Pointe, LLC ("Village"), appears by counsel Steven R. Smith and Eldon J. Shields of Gates, Shields & Ferguson, P.A., and Ronald S. Weiss of Berman DeLeve Kuchan & Chapman L.C. The Court has reviewed the relevant pleadings and is now ready to rule.

Village is suing under the Kansas Uniform Fraudulent Transfer Act to avoid a mortgage the Debtor gave to another creditor. The NRC Defendants are those who allegedly caused the Debtor to give the mortgage, but there are no allegations that they personally received any interest in the mortgage or any personal benefit from the Debtor granting it. Village seeks relief in three counts. The first two counts ask to have the mortgage avoided, and the third count asks for actual and punitive damages. The NRC Defendants contend the Kansas UFTA does not authorize any recovery from someone who may have participated in a fraudulent transfer but personally received neither any of the property transferred nor any benefit from the transfer. After giving the matter due consideration, the Court concludes the NRC Defendants are right, and their motion to dismiss should be granted.

**Facts**

Village is a creditor of the Chapter 11 Debtor, and brought this proceeding to try to avoid a $2,566,165.12 mortgage the Debtor gave to Bentley Investments of Nevada, LLC,

in April 2008. Village alleges that Seat, Comeau, and Bettis were, at the relevant times, managers and members of NRC Advisors, LLC, and that NRC Advisors was the manager of both the Debtor and Bentley Investments when the mortgage was given. Village alleges the mortgage encumbers substantially all of the Debtor's assets.

Village's original, first amended, and second amended complaints all make the same allegations against the NRC Defendants, namely, that Seat, Comeau, and Bettis are the managers and members of NRC Advisors, which was in turn the manager of the Debtor and of Bentley Investments when the Debtor gave Bentley Investments a mortgage on its Mission Corner property. The Court has compared the proposed second amended complaint to the original complaint, and found no change in Village's claims against the NRC Defendants. Consequently, even though Village's motion to file the second amended complaint has not yet been ruled on, whether or not the motion is granted will have no impact on the issues decided by this opinion.

In Count I, Village alleges the mortgage was given to Bentley Investments with the actual intent to hinder, delay, and defraud the Debtor's creditors, in violation of K.S.A. 33-204(a)(1) of the UFTA, so Village can avoid the mortgage under K.S.A. 33-207(a)(1). Village also alleges that because of the Debtor's and Bentley Investments' common ownership and management, Bentley Investments knew or should have known the mortgage was a fraudulent transfer.

In Count II, Village alleges the Debtor gave the mortgage without receiving "any reasonably equivalent value" in return, in violation of K.S.A. 33-204(a)(2) of the UFTA.

3

When the Debtor gave the mortgage, Village further alleges, the Debtor was engaged in business for which its remaining assets were unreasonably small in relation to its business, and the Debtor believed or reasonably should have believed it would incur debts beyond its ability to pay as they became due, and the mortgage was therefore a fraudulent transfer as defined by K.S.A. 33-204(a)(2)(A) and (B). Village again alleges the Debtor's and Bentley Investments' common management means Bentley Investments knew or should have known the mortgage was a fraudulent transfer under those provisions. Village concludes Count II by alleging it is entitled to avoid the mortgage under K.S.A. 33-207(a)(1).

In Count III, Village alleges the giving of the mortgage involved the following circumstances: (1) the transfer was to an insider of the Debtor because the Debtor and Bentley Investments are both owned by Gary Hall and managed by NRC Advisors, which has the same managers as the Debtor, namely, Seat, Comeau, and Bettis; (2) the Debtor remained in possession and control of Mission Corner after giving the mortgage; (3) the Debtor did not disclose the mortgage to Village; (4) the Debtor had been sued by Village in state court before it gave the mortgage; (5) the mortgage encumbers substantially all the Debtor's assets; (6) Bentley Investments gave the Debtor no consideration for the mortgage; (7) the Debtor claims it became insolvent shortly after giving the mortgage; and (8) the mortgage was given shortly after the state court granted partial summary judgment on Village's counterclaims against the Debtor. Village alleges that as a direct and proximate result of the Debtor giving the mortgage to Bentley Investments, Village

4

sustained actual damages in excess of $75,000. Pursuant to K.S.A. 33-207(a)(3)(C)[1] and *McCain Foods, USA, Inc., v. Central Processors, Inc.*,[2] Village asserts, the Debtor and the NRC Defendants are liable to it under the UFTA for actual and punitive damages.

On October 21, 2010, the NRC Defendants filed a motion to dismiss and memorandum in support, arguing (1) the UFTA does not provide a remedy against any of the NRC Defendants because none of them are transferors, transferees, beneficiaries, or subsequent transferees of the mortgage that Village is trying to avoid; (2) the NRC Defendants are not proper parties because a manager or member of a limited liability company is not liable for the company's debt based solely on his status as a manager or member, citing K.S.A. 17-7688; and (3) Village's claim against the NRC Defendants for punitive damages cannot stand alone, which it does since neither of its other claims states a valid claim for relief against them. In response, Village argues (1) individuals who perform the acts by which an entity makes a transfer that can be avoided under the UFTA are indispensable parties to litigation seeking to avoid the transfer and can be held liable for corporate acts; (2) in *McCain Foods*, the Kansas Supreme Court held an officer and director of a company liable for a fraudulent transfer because he was the actor who caused the company to make the transfer; (3) the NRC Defendants are apparently no longer managers of the Debtor and Bentley Investments, so if they are dismissed, the

---

[1] Village actually gives the cite as "K.S.A. 33-207(c)," but that provision contains no subsection (c), only (a) and (b). The Court concludes Village intended to refer to subsection (a)(3)(C), which says a creditor may obtain "any other relief the circumstances may require." Nothing else in the provision is even arguably broad enough to cover actual and punitive damages.

[2] 275 Kan. 1 (2002).

5

Debtor might claim it was not aware of and did not authorize the mortgage; (4) in order to prove the existence of the "badges of fraud" set out in K.S.A. 33-204(b), Village "must deal with the actor[s] who made the transfer," the Debtor's knowledge and actions had to come through the NRC Defendants, and the NRC Defendants are therefore necessary parties; and (5) in *McCain Foods*, both actual and punitive damages were awarded against the officer-director who performed the acts that were determined to be a fraudulent transfer, so actual and punitive damages may be awarded in this case against the NRC Defendants because they performed the acts Village alleges were a fraudulent transfer.

**Discussion**

**A.     The standard governing a ruling on a motion to dismiss for failure to state a claim for relief.**

Federal Rule of Civil Procedure 12 provides that defenses are generally to be asserted in a responsive pleading but that certain defenses may be made by motion, including the defense of "failure to state a claim upon which relief can be granted."[3] In *Bell Atlantic Corporation v. Twombly*,[4] the Supreme Court described the standard that must be met in pleading a claim for relief this way:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson*[,] 355 U.S. [41,] 47 (1957). While a

---

[3] Fed. R. Civil P. 12(b)(6). Fed. R. Bankr. P. 7012(b) makes Civil Rule 12(b) apply in adversary proceedings.

[4] 550 U.S. 544 (2007).

6

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid*.; [additional citation omitted], a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, [citation omitted]. Factual allegations must be enough to raise a right to relief above the speculative level, [citation and footnote omitted], on the assumption that all the allegations in the complaint are true (even if doubtful in fact), [citations omitted].[5]

The Court further explained in *Iqbal v. United States*:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [Citation omitted]. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. [Citation omitted]. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [Citation omitted]. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief."[6]

The Court also rejected an assertion that *Twombly* was limited to antitrust complaints, saying the ruling was its interpretation and application of Civil Rule 8, and Civil Rule 1 states that the Rules apply "in all civil actions and proceedings" in federal trial courts.

*Twombly* and *Iqbal* require Village's complaint to state a plausible claim for relief against the NRC Defendants in order to withstand their motion to dismiss. Since Village

---

[5]*Id*. at 555-56. Fed. R. Bankr. P. 7008(a) makes Civil Rule 8 apply in adversary proceedings.

[6]___ U.S. ___, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009).

7

bases its claims solely on the UFTA, the claims must be plausible under that Act.

**B.      Relevant provisions of the Kansas Uniform Fraudulent Transfer Act.**

K.S.A. 33-204(a)(1) defines a transfer made by a debtor to be fraudulent as to a creditor if it is made with the actual intent to hinder, delay, or defraud any of the debtor's creditors.  K.S.A. 33-204(a)(2) defines a transfer to be fraudulent as to a creditor if it is made without receiving reasonably equivalent value in exchange and the debtor either (1) was engaged in business or a transaction for which its remaining assets were unreasonably small, or (2) the debtor intended to incur, or believed or reasonably should have believed it would incur, debts beyond its ability to pay.  These provisions define transfers that are fraudulent, but do not specify any remedies a creditor may obtain by showing a transfer its debtor made was fraudulent.  Some of the available remedies are set out in K.S.A. 33-207.  It provides:

> **Remedies of creditors.**  (a) In an action for relief against a transfer or obligation under this act, a creditor, subject to the limitations in K.S.A. 33-208, may obtain:
>
>> (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
>>
>> (2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by K.S.A. 60-701 et seq. and amendments thereto or other appropriate provision of law;
>>
>> (3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
>>
>>> (A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

8

> > > (B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
> >
> > > (C) any other relief the circumstances may require.
>
> (b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

K.S.A. 33-208(b), not cited by Village, is also relevant here. It reads:

> Except as otherwise provided in this section,[7] to the extent a transfer is voidable in an action by a creditor under subsection (a)(1) of K.S.A. 33-207, the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c), or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:
>
> > (1) The first transferee of the asset or the person for whose benefit the transfer was made; or
> >
> > (2) any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee.

**C.     Analysis of the language of these UFTA provisions.**

Village relies only on subsection (a) of K.S.A. 33-207 as the statutory authority for the remedies it seeks against the NRC Defendants. The Kansas Supreme Court has said:

> When we are called upon to interpret a statute, we first attempt to give effect to the intent of the legislature as expressed through the language enacted. When a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it. We need not resort to statutory construction. It is only if the statute's language or text is unclear or ambiguous that we move to the next analytical step, applying canons of construction or relying on legislative history construing the statute to effect

---

[7] None of the exceptions in the section would apply here.

the legislature's intent.[8]

The Court believes that Village is asking the Court to "read the [UFTA] to add something not readily found in it." The Court notes that subsection (a) of K.S.A. 33-207 provides remedies only against transfers, obligations, and assets, that is, *in rem* relief (relief against property). This means the language of K.S.A. 33-207(a)(3)(C) — the provision Village relies on[9] — authorizing "any other relief the circumstances may require" does not invite courts to craft remedies against persons involved in an avoidable transfer, but only additional remedies against the transfers, obligations, or assets involved. The provision would be stretched beyond recognition if it were applied to authorize *in personam* relief against every person who might have participated in the transfer. K.S.A. 33-208(b), however, does authorize monetary *in personam* relief, but only against a limited group of persons, namely, the first transferee of the fraudulent transfer, the person for whose benefit the fraudulent transfer was made, or a subsequent transferee who did not take in good faith for value. Furthermore, unlike K.S.A. 33-207(a), K.S.A. 33-208(b) contains no language even remotely suggesting courts are free to expand this list of persons against whom a judgment may be entered. In short, Village's claims against the NRC Defendants ask the Court "to read the [UFTA] to add something not readily found in it," an approach the Kansas Supreme Court has rejected. The language of the UFTA does not suggest Village's claims against the NRC Defendants are plausible claims for relief.

---

[8]*In re K.M.H.*, 285 Kan. 53, 79 (2007).

[9]*See* footnote 3 above.

**D.     *McCain Foods USA, Inc., v. Central Processors*.**

In response to the NRC Defendants' argument that K.S.A. 33-207(a)(1) and K.S.A. 33-208(b) do not authorize any remedies against anyone but the transferee of the asset, a person for whose benefit the transfer was made, or a subsequent transferee other than one who took in good faith for value, Village contends that *McCain Foods* shows it has stated a claim for relief against the NRC Defendants. Village says the Kansas Supreme Court affirmed an award of both actual and punitive damages against an individual who was an officer and director of the plaintiff-creditor's debtor because that individual "had committed the fraudulent transfer of the company's assets to the detriment of" the plaintiff-creditor.[10] A thorough review of *McCain Foods* is in order.

In *McCain Foods*, the Kansas Supreme Court affirmed the state trial court's factual findings, concluding they were supported by substantial competent evidence. The findings established the following facts.[11] A man named Glen Shore became involved as an officer and director of two intimately-related Kansas companies, Allen Quality Foods, which mainly procured government food contracts and owed a debt to McCain Foods, and Central Processors, which mainly provided food Allen needed to fulfill its government food contracts. The same people served as officers and directors of Allen and Central. Shore loaned money to both companies and guaranteed leases and loans

---

[10]Docket #79 at 4-5.

[11]This description of the facts is based on the summary judgment facts and the findings the trial court made after the bench trial, as quoted by the supreme court. 275 Kan. at 3-9.

11

made to them. Allen[12] sent a check to McCain Foods for $125,000, part of the amount McCain Foods claimed it was owed. A few days later, someone caused Allen to transfer $120,000 to Central for no consideration; after hearing the evidence, the trial court found that Shore made that transfer, rejecting his denial of that fact. The court also found Allen's assets were worth at most only $5,000 to $6,000 from this time forward. After transferring the money between the companies, Shore stopped payment on the $125,000 check. Shore claimed he could not verify a debt was owed to McCain Foods, but two other officer-directors testified they told him the debt was legitimate.

A short time after Shore stopped payment on the $125,000 check and transferred Allen's $120,000 to Central, Allen paid $25,000 by check on a bank debt that Shore had guaranteed; Shore was one of the authorized signers of the check. A few days later, Central paid $50,000 by check on the bank debt Shore had guaranteed; Shore was one of the authorized signers of this check. In an Illinois court, McCain Foods sued Allen to collect its debt, and a couple of weeks after the $25,000 and $50,000 payments were made, Shore was served with process in that suit on behalf of Allen. A week after that, Allen paid Shore $45,000 by check to repay a loan he had made; Shore was one of the authorized signers of this check. Finally, about six weeks after making that payment to Shore, Allen paid another $4,495 on the bank debt that Shore had guaranteed; Shore was one of the authorized signers of this check. A few days after that payment was made,

---

[12]Early on, the opinion states the check came from Central, 275 Kan. at 4, but then quotes several of the trial court's findings that state the check came from Allen, 275 Kan. at 5, 8, and 9. The first statement appears to be an error.

12

Case 10-06025    Doc# 85    Filed 02/17/11    Page 12 of 20

McCain Foods obtained a default judgment against Allen for almost $240,000. That Illinois judgment was then registered in Sedgwick County, Kansas.

McCain Foods later sued Shore, among others, in a Kansas state court, asserting claims under the Kansas UFTA. The trial court initially granted a partial summary judgment against Shore, concluding the three payments on the bank debt and the one payment to Shore himself were fraudulent under K.S.A. 33-205(b). Then, following a bench trial, the court found that Shore had made those same four transfers with actual intent to hinder, delay or defraud Allen's creditors, so the transfers were fraudulent under K.S.A. 33-204(a)(1). The court awarded McCain Foods a judgment against Shore for $124,495 (the sum of the transfers of $25,000, $50,000, $45,000, and $4,495), and also awarded $20,000 in punitive damages against Shore, finding that he had acted toward McCain Foods with "willful conduct and fraud."

Shore appealed and the appeal was transferred to the Kansas Supreme Court on that court's motion. The court noted that neither the trial court's authority to award punitive damages under the UFTA nor the amount it awarded was an issue on appeal.[13] The court affirmed the bench trial judgment entered under K.S.A. 33-204, so it declined to review the partial summary judgment ruling entered under 33-205(b). The court said the issues Shore raised all tested the sufficiency of the evidence.[14] After reviewing the facts found by the trial court and considering Shore's arguments, the court concluded the

---

[13]*Id*. at 3.

[14]*Id*.

evidence supported the trial court's findings, and therefore affirmed the judgment.[15] One of Shore's arguments was that the bank was not an insider of Allen, so the payments made on its debt could not be treated as satisfying the "insider" badge of fraud under K.S.A. 33-204(b)(1).[16] The court rejected this argument for several reasons, including the fact K.S.A. 33-201(*l*) defines "transfer" to include indirect transfers, which meant the benefits Shore received from the payments on the debt he had guaranteed could make the transfers qualify as ones to an insider.

Village argues *McCain Foods* means an entity's officer, director, or manager may be found liable for actual and punitive damages because the officer, director, or manager participated in a transfer of the entity's property that was fraudulent under K.S.A. 33-204 or 33-205. The NRC Defendants respond that Shore was found liable in that case because he was a direct or indirect transferee of the four transfers at issue, not simply because of his corporate position. The Court agrees with the NRC Defendants. Shore's liability was based on the fact he either directly received or indirectly benefitted from the four payments the creditor successfully attacked, not the fact he caused the transfers to be made. This is exactly what K.S.A. 33-208(b)(1) says: "[T]o the extent a transfer is voidable in an action by a creditor under subsection (a)(1) of K.S.A. 33-207, the creditor may recover judgment for the value of the asset transferred, . . . or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:

---

[15]*Id*. at 9-19.

[16]*Id*. at 14-15.

(1) The first transferee of the asset *or the person for whose benefit the transfer was made*." Shore was clearly covered by this provision in *McCain Foods*, and the decision says nothing about the possibility of recovering from a person or entity who participated in a fraudulent transfer but did not either receive the property transferred or receive a benefit from the transfer. Bentley Investments, not the NRC Defendants, received and still holds the mortgage Village is seeking to avoid, so the NRC Defendants were not first or subsequent transferees of the mortgage. Village has not alleged any of the NRC Defendants benefitted in any way from the mortgage given to Bentley Investments, so *McCain Foods* does not support Village's claim against them.

**E.     Some decisions considering the remedies for fraudulent conveyances under the Bankruptcy Act suggest additional reasons to reject Village's effort to expand the remedies specified in the UFTA.**

It may seem plausible that if a creditor can prove a person running an entity intentionally caused the entity to make a fraudulent transfer, the creditor might be entitled to some kind of recovery from the person. In *Elliott v. Glushon*,[17] the Ninth Circuit said it was tempted to apply the usual rule that joint tortfeasors are jointly liable for the tort they commit, when it was considering a plaintiff's attempt under the fraudulent conveyance provisions of the Bankruptcy Act of 1898[18] to recover from a person who participated in a

---

[17] 390 F.2d 514 (9th Cir. 1967).

[18] Under the current Bankruptcy Code, § 550(a) specifies those from whom avoided transfers, including fraudulent transfers, may be recovered. Section 550(a) consolidated recovery provisions of its predecessor, the Bankruptcy Act, with some modifications. *See* 5 *Collier on Bankruptcy* ¶ 548.LH (Alan N. Resnick & Henry J. Sommer (eds.-in-chief, 16th ed. 2010). Comment 2 to § 8 of the UFTA (which is

15

fraudulent conveyance but received no property or other benefit from the conveyance. However, it instead concluded the Bankruptcy Act authorized the recovery of a fraudulent conveyance only from the transferor or transferees of the conveyed property, and not from anyone who did not receive any interest in that property:

> We must remember, however, that we are interpreting a statute designed to deal with bankruptcy matters in a somewhat circumscribed fashion, and not to preempt all state laws governing, for example, questions of fraud and deceit. The purpose of those sections of the Bankruptcy Act which are here relevant is clearly to preserve the assets of the bankrupt; they are not intended to render civilly liable all persons who may have contributed in some way to the dissipation of those assets. The Act carefully speaks of conveyances of property as being "null and void," and authorizes suit by the trustee to "reclaim and recover such property or collect its value." The actions legislated against are not "prohibited"; those persons whose actions are rendered "null and void" are not made "liable"; and terms such as "damages" are not used. The legislative theory is cancellation, not the creation of liability for the consequences of a wrongful act.
> It is also significant that the term "fraudulent transfer" as used in the Act includes a great many transactions which do not constitute "actual" fraud; no intent to defraud need be found so long as the prescribed statutory criteria are met. Thus there is affirmative justification for rejecting a rule under which all persons having a hand in transactions later held void under the Act would be civilly liable. Limiting recovery in the manner suggested by the appellee Glushon protects innocent persons from civil liability, while at the same time preserving the assets of the bankrupt's estate. The trustee may bring suit against those persons who received the transferred property. He may recover from them the value of that property if, for example, they have converted it so that recovery in specie is no longer possible. In the overwhelming number of instances, these rights will suffice to allow the trustee fully to protect the interests of creditors. And even if recovery against the recipients of the property is not possible [(]because, for instance,

---

K.S.A. 33-208) says subsection (b) is derived from § 550(a) of the Bankruptcy Code. *See* Uniform Fraudulent Transfer Act of 1984, § 8, cmt. 2, 2006 Main Volume (*available on* Westlaw in Uniform Laws Annotated ("ula") database). Consequently, rulings about the remedies for fraudulent conveyances under the Bankruptcy Act can be persuasive authority on questions arising under the UFTA.

16

of their own insolvency), state law may well — where actual fraud was engaged in — allow a damage action in the nature of deceit against any conspirators.[19]

In *Mack v. Newton*, the Fifth Circuit agreed with *Elliott*'s interpretation of the fraudulent conveyance provisions of the Bankruptcy Act, and then looked at the Texas version of the Uniform Fraudulent Conveyance Act, the predecessor to the UFTA, to see whether it authorized recovery from someone who participated in a transfer but received none of the transferred property, and concluded the same reasoning applied to the Texas statute.[20] The Fifth Circuit also said the majority rule was that the UFTA's predecessor imposed liability only on transferors or transferees of property, not on those who participated in a transfer but received no property or other benefit from the transfer.[21] The Tenth Circuit made a similar assertion in dicta in a footnote in its decision in *Lowell Staats Mining Company, Inc., v. Philadelphia Electric Company*, disagreeing with the lower court's finding that a creditor had stated a claim for relief against an entity's agent by alleging the agent personally helped the entity make fraudulent conveyances, saying, "'[C]ourts have generally held as to fraudulent conveyances that a person who assists another to procure one, is not liable in tort to the insolvent's creditors.'"[22]

The Kansas version of the UFTA uses language that is similar to the language

---

[19]390 F.2d at 516-17.

[20]737 F.2d 1343, 1361 (5th Cir. 1984).

[21]*Id.* at 1361-62.

[22]878 F.2d 1271, 1276 n. 1 (1989) (quoting *Duell v. Brewer*, 92 F.2d 59, 61 (2d Cir.1937), which cited *Adler v. Fenton*, 65 U.S. (24 How.) 407, 412 (1860)).

17

referred to in *Elliott* and *Mack*: (1) transfers are declared to be "fraudulent" and subject to "avoidance" or "voidable," (2) a creditor is authorized to sue to avoid a transfer and attach or levy execution on the transferred asset, (3) the word "damages" is not used, (4) the only money judgment explicitly authorized is limited to the lesser of the value of the transferred asset or the creditor's claim, and (5) the money judgment is only available against either the first transferee of the asset, the person for whose benefit the transfer was made, or any subsequent transferee who did not take in good faith for value. Furthermore, unlike the old Bankruptcy Act and now the Bankruptcy Code, the UFTA does not establish a process that operates for the collective benefit of a debtor's creditors, but instead one that enables a single creditor to avoid a fraudulent transfer and recover the transferred asset or its value solely for itself. This suggests the UFTA should not be broadly construed to provide more expansive remedies than those available under the fraudulent conveyance provisions of the bankruptcy laws. *Elliott* and *Mack* provide strong support for the conclusion that Village's second amended complaint does not state a claim for relief against any of the NRC Defendants because it does not allege any of them received the mortgage or benefitted either directly or indirectly from the Debtor's giving of the mortgage.

**F.     Punitive damages.**

Before the UFTA was adopted in Kansas, the Kansas Court of Appeals held that punitive damages were available in an action under K.S.A. 33-102 to avoid a fraudulent

conveyance.[23] The court said punitive damages are not compensatory, but are awarded in Kansas to punish a wrongdoer for his malicious, vindictive, or willful and wanton invasion of another's rights; their ultimate purpose is to deter others from committing similar wrongs.[24] However, punitive damages are available only in connection with an independent cause of action, which the court determined could be an action to avoid a fraudulent conveyance.[25] Since Village has not stated a valid claim for relief against the NRC Defendants, either for avoidance of a fraudulent conveyance or for anything else, it has also failed to state a valid claim to recover punitive damages from them under Kansas law.

**G.** **The fact a person was an entity's manager and member at the relevant time, and therefore should have knowledge of and might have performed or authorized action the entity took makes that person a potential witness in a suit about the entity's action, but unless a valid claim for relief is asserted against the person, that fact does not make the person a necessary party to the suit.**

Village argues the NRC Defendants are necessary parties to its suit to avoid the mortgage the Debtor gave Bentley Investments because, as the managers and members of the Debtor, they had knowledge of and either performed or authorized the Debtor's

---

[23]*Golconda Screw, Inc., v. West Bottoms Ltd.*, 20 Kan. App. 2d 1002, 1005-08 (1995).

[24]*Id*. at 1007.

[25]*Id*. at 1006-08.

19

actions.  But the fact someone has knowledge about the events on which a lawsuit is based means only that the person should be a witness in the suit.  A plaintiff must state a valid claim for relief against the person, or else the Court must grant the person's motion to be dismissed as a party.  Even though the Court is dismissing Village's claims against the NRC Defendants, Village may still pursue discovery against them as non-parties (until the time for discovery ends, of course), and may subpoena them to appear and testify at trial even though they will no longer be parties to the suit.  Having been involved in the events that give rise to a lawsuit simply does not make a person a necessary party to the suit.

**Conclusion**

For these reasons, the Court concludes Kansas Uniform Fraudulent Transfer Act does not authorize a creditor to recover actual and punitive damages from a person or entity who participated in a fraudulent transfer the creditor may avoid under the UFTA if the person or entity did not receive an interest in the transferred asset or receive some other personal benefit from the transfer.  Consequently, the NRC Defendants' motion to dismiss should be and it is hereby granted.  Village's claims against the NRC Defendants are hereby dismissed.

# # #