**SO ORDERED.**

**SIGNED this 02 day of March, 2011.**



_____
Dale L. Somers
UNITED STATES BANKRUPTCY JUDGE

_____

Opinion Designated for Electronic Use, But Not for Print Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: <br><br> **TERRA BENTLEY II, LLC,** <br><br> DEBTOR. | CASE NO. 09-23107-11 <br> CHAPTER 11 |
| **VILLAGE OF OVERLAND POINTE, LLC,** <br><br> PLAINTIFF, <br><br> v. <br><br> **TERRA BENTLEY II, LLC,** <br> **NRC ADVISORS, LLC,** <br> **STEVEN SEAT,** <br> **ERIC COMEAU,** <br> **TONY BETTIS,** <br><br> DEFENDANTS. | ADV. NO. 10-6025 |

**OPINION GRANTING THE DEFENDANT-DEBTOR'S MOTION FOR**

**JUDGMENT ON THE PLEADINGS, AND DENYING AS MOOT THE**

## PLAINTIFF'S MOTIONS TO AMEND ITS COMPLAINT

This proceeding is before the Court on a motion for judgment on the pleadings filed by the Defendants. When the motion was filed, the Defendants were all represented by counsel James F.B. Daniels of McDowell Rice Smith & Buchanan, but he subsequently withdrew from representing four of them and now represents only Defendant-Debtor Terra Bentley II, LLC. The Court recently granted a motion to dismiss filed by NRC Advisors, LLC, Steven Seat, Eric Comeau, and Tony Bettis, so the Debtor is now the only Defendant.[1] Plaintiff Village of Overland Pointe, LLC ("Village"), appears by counsel Steven R. Smith and Eldon J. Shields of Gates, Shields & Ferguson, P.A., and Ronald S. Weiss and Tracee L. Stout of Berman DeLeve Kuchan & Chapman, L.C. The Court has reviewed the relevant pleadings and is now ready to rule.

Village is a creditor of the Debtor, and is suing under the Kansas Uniform Fraudulent Transfer Act ("the UFTA") to avoid a mortgage the Debtor gave to another creditor before filing for bankruptcy. Village seeks relief in three counts. The first two counts ask to have the mortgage avoided, and the third count asks for actual and punitive damages. The Debtor contends such causes of action belong exclusively to it as the Chapter 11 Debtor-in-possession, and Village has no standing to pursue them. A very liberal interpretation of Village's response suggests the creditor is asking to be granted

---

[1] *See* Docket No. 84, entered Feb. 18, 2011. The Plaintiff has filed a motion to amend its complaint to add Bentley Investments of Nevada, LLC, as a Defendant, Docket No. 27, but that motion has not yet been ruled on. In light of the dismissal of all claims against the other four named Defendants, the Court will refer to the motion for judgment on the pleadings as the Debtor's motion.

2

"derivative standing" to pursue the avoidance action on behalf of the bankruptcy estate. After giving the matter due consideration, the Court concludes Village has failed to show, or even allege, the existence of the prerequisites for derivative standing. Consequently, the Debtor's motion for judgment on the pleadings will be granted.

**Facts**

Village brought this proceeding to try to avoid a $2,566,165.12 mortgage the Debtor gave to Bentley Investments of Nevada, LLC, in April 2008. Village alleges the mortgage encumbers substantially all of the Debtor's assets.

Since filing its original complaint, Village has moved for permission to file a first amended complaint and a second amended complaint. All the complaints assert the same three counts with slight variations. The only significant change either amended complaint would make is to add the recipient of the mortgage as another defendant. No version of the complaint includes an assertion that Village seeks to pursue its complaint on behalf of the Debtor's bankruptcy estate, or that the Debtor was asked to pursue the claims and refused. Village has not filed a motion in either this proceeding or the Debtor's main case seeking permission to pursue the claims it is asserting here.

In Count I, Village alleges the mortgage was given to Bentley Investments with the actual intent to hinder, delay, and defraud the Debtor's creditors, in violation of K.S.A. 33-204(a)(1) of the UFTA, so Village can avoid the mortgage under K.S.A. 33-207(a)(1). Village also alleges that because of the Debtor's and Bentley Investments' common ownership and management, Bentley Investments knew or should have known the

3

mortgage was a fraudulent transfer.

In Count II, Village alleges the Debtor gave the mortgage without receiving "any reasonably equivalent value" in return, in violation of K.S.A. 33-204(a)(2) of the UFTA. When the Debtor gave the mortgage, Village further alleges, the Debtor was engaged in business for which its remaining assets were unreasonably small in relation to its business, and the Debtor believed or reasonably should have believed it would incur debts beyond its ability to pay as they became due, and the mortgage was therefore a fraudulent transfer as defined by K.S.A. 33-204(a)(2)(A) and (B). Village again alleges the Debtor's and Bentley Investments' common management means Bentley Investments knew or should have known the mortgage was a fraudulent transfer under those provisions. Village concludes Count II by alleging it is entitled to avoid the mortgage under K.S.A. 33-207(a)(1). This type of claim is often referred to as a constructively fraudulent transfer claim because no actual fraudulent intent is required.

In Count III, Village alleges the giving of the mortgage involved the following circumstances: (1) the transfer was to an insider of the Debtor because the Debtor and Bentley Investments are both owned by Gary Hall and managed by NRC Advisors, which has the same managers as the Debtor; (2) the Debtor remained in possession and control of Mission Corner after giving the mortgage; (3) the Debtor did not disclose the mortgage to Village; (4) the Debtor had been sued by Village in state court before it gave the mortgage; (5) the mortgage encumbers substantially all the Debtor's assets; (6) Bentley Investments gave the Debtor no consideration for the mortgage; (7) the Debtor claims it

4

became insolvent shortly after giving the mortgage; and (8) the mortgage was given shortly after the state court granted partial summary judgment on Village's counterclaims against the Debtor. Village alleges that as a direct and proximate result of the Debtor giving the mortgage to Bentley Investments, Village sustained actual damages in excess of $75,000, and that the Debtor and Bentley Investments[2] are liable to it under the UFTA for actual and punitive damages.

On July 27, 2010, the Debtor filed its motion for judgment on the pleadings, contending causes of action to avoid fraudulent transfers it might have made before filing for bankruptcy belong to it exclusively as the Debtor-in-possession. The Debtor adds that it has proposed a plan that would treat Bentley Investments' mortgage as effective to secure only an amount the creditor actually paid for grading, engineering, and other work on the Debtor's property, estimated to be approximately $850,000, and not the $2,566,165 shown as the full amount of the debt on the Debtor's "Schedule D — Creditors Holding Secured Claims." In the plan, the Debtor states it will take such action as may be necessary to have Bentley Investments' secured claim treated in that manner.

In response to the Debtor's motion, Village concedes claims for fraudulent transfers generally belong to the Chapter 11 debtor-in-possession, but argues it can and should be granted derivative standing to pursue the claims it is making in this proceeding. Villages says, "[B]ecause of the relationships among the individuals and entities

---

[2]As noted earlier, the Court recently dismissed the claims against the other four Defendants, and Village has not yet been allowed to add Bentley Investments as a Defendant.

5

Case 10-06025    Doc# 88    Filed 03/02/11    Page 5 of 13

involved in the Mortgage sought to be set aside, it would be difficult and highly unlikely that the [Debtor] would prosecute an action to set aside a fraudulent transfer."[3] Village cites a number of cases in which courts have granted "derivative standing" to enable parties other than the trustee or debtor-in-possession to pursue avoidance actions in bankruptcy cases.

**Discussion**

**A.     The standard governing a ruling on a motion for judgment on the pleadings.**

Federal Rule of Civil Procedure 12(c) provides that "After the pleadings are closed . . . a party may move for judgment on the pleadings."[4] The Tenth Circuit has explained that the standard for ruling on a motion under Rule 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6) for failure to state a claim for relief.[5] In recent years, the Supreme Court has twice addressed the question of what a complaint must do to survive a motion under Rule 12(b)(6). In *Bell Atlantic Corporation v. Twombly*,[6] the Court described the standard that must be met in pleading a claim for relief this way:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson*[,] 355 U.S. [41,] 47 (1957).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

---

[3]Docket no. 48 at 4.

[4]Fed. R. Bankr. P. 7012(b) makes Civil Rule 12(b) apply in adversary proceedings.

[5]*Corder v. Lewis Palmer School Dist. No. 38*, 566 F.3d 1219, 1223-24 (10th Cir. 2009).

[6]550 U.S. 544 (2007).

6

detailed factual allegations, *ibid*.; [additional citation omitted], a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, [citation omitted]. Factual allegations must be enough to raise a right to relief above the speculative level, [citation and footnote omitted], on the assumption that all the allegations in the complaint are true (even if doubtful in fact), [citations omitted].[7]

The Court further explained in *Iqbal v. United States*:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [Citation omitted]. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. [Citation omitted]. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [Citation omitted]. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief."[8]

The Court also rejected an assertion that *Twombly* was limited to antitrust complaints, saying that the ruling was its interpretation and application of Civil Rule 8 and that Civil Rule 1 states that the Rules apply "in all civil actions and proceedings" in federal trial courts.

*Twombly* and *Iqbal* require Village's complaint to state a plausible claim for relief in order to withstand the Debtor's motion for judgment on the pleadings. Since the

---

[7] *Id*. at 555-56. Fed. R. Bankr. P. 7008(a) makes Civil Rule 8 apply in adversary proceedings.

[8] ___ U.S. ___, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009).

7

Debtor's motion asserts that the Bankruptcy Code gives it the exclusive right to pursue the claims Village is making here, Village's argument that it is entitled to pursue the claims must be plausible under the Code.

**B.      Case Law about Derivative Standing to Pursue Avoidance Actions**

Village correctly points out that in bankruptcy cases, many courts have found an implied but qualified right under certain circumstances for creditors, through "derivative standing," to pursue avoidance claims that otherwise belong exclusively to the trustee or the debtor-in-possession.[9] Sometimes, the courts have explained such derivative standing to be similar to a shareholder's derivative lawsuit on behalf of a corporation.[10] In *In re Racing Services, Inc.*, the Eighth Circuit joined the Second, Third, Fifth, Sixth, Seventh, and Ninth Circuits in recognizing an implied right for a creditor or a creditors' committee to be granted permission to pursue avoidance actions on behalf of the bankruptcy estate

---

[9] *See In re Racing Servs, Inc.*, 540 F.3d 892, 898 (8th Cir. 2008) (citing *Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 176 (2d Cir.2005) (creditors' committee may be granted standing to pursue cause of action when debtor-in-possession's refusal to do so was unjustifiable); *Official Comm. of Unsecured Creditors v. Chinery (In re Cybergenics Corp.)*, 330 F.3d 548, 553 (3d Cir.2003) (*en banc*) (derivative standing available to creditors' committee when debtor-in-possession's refusal to pursue avoidance action was unreasonable); *Fogel v. Zell*, 221 F.3d 955, 965 (7th Cir.2000) (trustee's refusal to pursue claim must be unjustifiable for creditor to be granted derivative standing to pursue it); *Avalanche Maritime, Ltd., v. Parekh (In re Parmetex, Inc.)*, 199 F.3d 1029, 1031 (9th Cir.1999) (creditors had standing to bring avoidance action where Chapter 7 trustee agreed and bankruptcy court approved agreement); *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.)*, 66 F.3d 1436, 1440-46 (6th Cir.1995) (creditor can be granted permission to pursue avoidance action if debtor-in-possession's refusal to do so was unjustified); *Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233, 247-52 (5th Cir.1988) (creditors' committee could be granted derivative standing to sue corporate debtor's officers on behalf of corporation where debtor's refusal to do so was unjustified).

[10] *E.g., Smart World Techs.*, 423 F.3d at 176; *Fogel v. Zell*, 221 F.3d at 965-66; *Louisiana World Exposition*, 858 F.2d at 247-52.

when the trustee or debtor-in-possession refuses to do so.[11] These cases acknowledge, however, that the trustee or debtor-in-possession ordinarily has the exclusive right to control avoidance actions, and require the creditor or creditors' committee to show that the trustee or debtor-in-possession abused its discretion by unjustifiably refusing to pursue the proposed claims, giving specific reasons why the refusal is unjustified.[12] The Tenth Circuit has apparently not yet ruled on the question. No Circuit court appears to have concluded derivative standing for creditors is never permissible, though, and the Court sees no reason to believe the Tenth Circuit would disagree with the unanimous view of the Circuits that have decided the question.

In *Racing Services*, the Eighth Circuit set out standards for bankruptcy courts to apply in deciding whether to grant derivative standing to creditors. It said:

> We therefore hold, to establish derivative standing, a creditor must show: (1) it petitioned the trustee to bring the claims and the trustee refused; (2) its claims are colorable; (3) it sought permission from the bankruptcy court to initiate an adversary proceeding; and (4) the trustee unjustifiably refused to pursue the claims. We expect in most cases creditors will readily satisfy the first three elements without much difficulty — petitioning the trustee and bankruptcy court ought to be mere formalities. And a creditor's claims are colorable if they would survive a motion to dismiss. The real challenge for the creditor will be to persuade the bankruptcy court that the trustee unjustifiably refuses to bring its claims. To satisfy its burden, the creditor, at a minimum, must provide the

---

[11]See cases cited at note 9.

[12]The Third Circuit said the refusal must be "unreasonable" rather than "unjustified," *Cybergenics*, 330 F.3d at 553, but this difference is unlikely to lead to a different result in any actual case. The Ninth Circuit ruled only that derivative standing was effective when the Chapter 7 trustee agreed creditors could bring the action and the bankruptcy court approved that agreement, *Parmetex*, 199 F.3d at 1031, and did not address the situation where the trustee or debtor-in-possession opposed the creditors' effort to bring the avoidance action.

9

bankruptcy court with *specific* reasons why it believes the trustee's refusal is unjustified. A creditor thus does not meet its burden with a naked assertion that 'the trustee's refusal is unjustified.' If presented with nothing more than this, the bankruptcy court may properly deny a creditor's motion without explanation. The creditor, *not the bankruptcy court*, has the onus of establishing the trustee unjustifiably refuses to bring the creditor's claim.[13]

The Sixth Circuit set out similar but somewhat different standards in *In re Gibson Group, Inc.*, saying:

> We decide, therefore, that a bankruptcy court may permit a single creditor in a Chapter 11 case to initiate an action to avoid a preferential or fraudulent transfer instead of the debtor-in-possession if the creditor: 1) has alleged a colorable claim that would benefit the estate, if successful, based on a cost-benefit analysis performed by the bankruptcy court; 2) has made a demand on the debtor-in-possession to file the avoidance action; 3) the demand has been refused; and, 4) the refusal is unjustified in light of the statutory obligations and fiduciary duties of the debtor-in-possession in a Chapter 11 reorganization. We also hold that, while the creditor has the initial burden to allege facts showing that the refusal to file suit is "unjustified," the debtor-in-possession must rebut the presumption if the creditor carries its initial burden. Contrary to the district court's view, we believe that a creditor need not plead facts alleging the debtor-in--possession's *reason* or *motive* for the inaction, but may meet its burden to allege unjustified inaction through notice pleading by alleging the existence of an unpursued colorable claim that would benefit the estate. *See* Fed.R.Civ.P. 8; Fed.R.Bankr.P. 7008 (making Fed.R.Civ.P. 8 applicable in bankruptcy adversary proceedings). If the debtor-in-possession gives no reason for its inaction when a demand is made, the bankruptcy court may presume that its inaction is an abuse of discretion ("unjustified") if the complaint alleges a colorable claim.[14]

With these standards in mind, the Court can only conclude Village has not shown that it should be granted derivative standing so it can pursue this proceeding.

---

[13] 540 F.3d 892, 900.

[14] *Canadian Pacific Forest Products, Ltd., v. J.D. Irving, Ltd. (In re Gibson Group, Inc.)*, 66 F.3d 1436, 1439-40 (6th Cir. 1995).

10

## C. Village's Complaints and Response to Motion for Judgment on the Pleadings Are Deficient

Although Village cited a number of cases about derivative standing, it made little effort to comply with any of the standards the decisions offered for determining whether derivative standing should be granted. For the following reasons, the Court concludes Village has not shown derivative standing is appropriate here.

First, in all three versions of its complaint, Village phrased the claims to avoid Bentley Investments' mortgage, and to recover actual and punitive damages from the Debtor and Bentley Investments as though they belonged to it alone. Village made no suggestion that it was trying to act on behalf of the Debtor's bankruptcy estate. Even if the Court were inclined to grant derivative standing, Village would have to amend its complaint again to make clear it was pursuing derivative relief for the estate, and not relief solely for its own benefit.

Second, Village has not alleged that it asked the Debtor to pursue the claims and the Debtor refused. Instead, in its response to the Debtor's motion, Village in effect asked the Court to assume the Debtor would not attack Bentley Investments' mortgage, saying, "In our case, because of the relationships among the individuals and entities involved in the Mortgage sought to be set aside, it would be difficult and highly unlikely that the Defendant would prosecute an action to set aside a fraudulent transfer."[15]

---

[15]Docket no. 48 at 4.

Third, the Debtor asserts it is in fact seeking, through its plan of reorganization, to avoid more than two-thirds of Bentley Investments' mortgage, despite the relationships Village thought made any such effort unlikely. This is hardly an unjustified refusal to pursue the claims Village has asserted. It can barely be called a refusal at all.

Fourth, the Debtor says the part of the mortgage it is not attacking secures $850,000 that Bentley Investments provided to pay for grading, engineering, and other work that was done on the Debtor's property. Under the UFTA, K.S.A. 33-208(d) provides that a good faith transferee of an otherwise avoidable fraudulent transfer is entitled to retain a lien to the extent of any value it gave the debtor for the transfer. Village's claims to avoid the mortgage would be subject to this potential defense for Bentley Investments, reducing the likelihood Village's efforts would produce a better result for the estate than the Debtor's plan proposal. So long as Bentley Investments could show it was a good faith transferee of the mortgage, the mortgage would remain effective to the extent of the $850,000 it provided to fund the Debtor's construction obligations even if the mortgage was otherwise found to be a fraudulent transfer under the UFTA. Village has not disputed the Debtor's assertion that Bentley Investments paid for work on its property, or otherwise explained why the Debtor's decision to attack the mortgage only to the extent it exceeded the amount allegedly paid for that work is unjustified.

Fifth, the Court notes that derivative standing could not be granted for Village to try to recover anything on behalf of the bankruptcy estate from the Debtor itself, because

such a recovery could provide no benefit to the estate. Everything a Chapter 11 debtor that is an artificial entity has is already property of the estate.

Sixth, since the Debtor still owns the property that is subject to Bentley Investments' mortgage, the property rights the Debtor transferred by giving the mortgage could easily be returned to the estate, and the only monetary recovery that might be obtained would be punitive damages. The Debtor could not sue itself to try to recover punitive damages for the estate, so derivative standing could not authorize Village to do so either.

**Conclusion**

For these reasons, the Court concludes Village has not shown that derivative standing is appropriate in this case. The Debtor's motion for judgment on the pleadings will therefore be granted. This ruling means Village's motions to amend its complaint are now moot, and must be denied.

A judgment based on this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 7058 and Federal Rule of Civil Procedure 58(a).

# # #